Matter of International Business Machs. Corp. & Combined Affiliates v Tax Appeals Trib. of the State of N.Y. (2023 NY Slip Op 01326)

Matter of International Business Machs. Corp. & Combined Affiliates v Tax Appeals Trib. of the State of N.Y.

2023 NY Slip Op 01326

Decided on March 16, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 16, 2023

533572
[*1]In the Matter of International Business Machines Corporation & Combined Affiliates, Petitioner,
v
Tax Appeals Tribunal of the State of New York et al., Respondents.

Calendar Date:January 13, 2023

Before:Egan Jr., J.P., Lynch, Clark, Ceresia and Fisher, JJ.

Baker & McKenzie LLP, New York City (Jeffrey A. Friedman of Eversheds Sutherland (US) LLP, Washington, DC, admitted pro hac vice and Michael J. Hilkin of Eversheds Sutherland (US) LLP, New York City, of counsel), for petitioner.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for Commissioner of Taxation and Finance, respondent.

Fisher, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal, among other things, sustaining a notice of deficiency of corporate franchise tax imposed under Tax Law article 9-A.
Petitioner, the legal owner of certain intangible property including the International Business Machines (hereinafter IBM) brand, is a technology and consulting corporation organized under the laws of New York that partly operates outside the United States through locally incorporated subsidiary companies (hereinafter foreign affiliates). IBM World Trade Corporation (hereinafter WTC), a wholly-owned subsidiary of petitioner which has its headquarters in New York, received certain assets and non-exclusive rights under certain patents to handle and develop the marketing of petitioner's products and equipment outside the United States. During the tax years ending in 2007 through 2012 (hereinafter the audit period), the foreign affiliates paid royalty payments to petitioner and WTC in exchange for the right to, among other things, exploit intangible property relating to software, hardware and services under IBM's patents, trademarks, copyrights, mask works, knowledge and related technical expertise. Petitioner and WTC deducted royalty payments received from its foreign affiliates for the audit period under Tax Law § 208 (former [9] [o]).
The Division of Taxation conducted a series of audits of petitioner's corporation franchise tax returns filed during the audit period and determined that petitioner could not deduct the foreign royalty payments in computing its combined entire net income on any such tax return. As a result, the Division disallowed and denied petitioner's various requests for a refund or overpayment and issued petitioner notices of disallowance or a notice of deficiency, as appropriate for each return. Petitioner sought review with the Division of Tax Appeals and the parties submitted a joint stipulation of facts in lieu of hearing before an Administrative Law Judge (hereinafter ALJ), who ultimately sustained the notices of disallowance and notice of deficiency. Petitioner filed an exception with respondent Tax Appeals Tribunal, which upheld the ALJ's determination. Petitioner commenced this proceeding in this Court to challenge the Tribunal's determination.
Initially, the Tribunal expressly rejected petitioner's royalty income exclusion argument based on its prior decision in Matter of Walt Disney Co. and Consolidated Subsidiaries (2020 WL 4788011, 2020 NY Tax LEXIS 140 [NY St Tax Appeals Trib DTA No. 828304, Aug. 6, 2020]). While the current matter was pending before us, this Court rendered a decision confirming the Tribunal's statutory interpretation of Tax Law § 208 (former [9] [o]) in that matter (Matter of Walt Disney Co. & Consol. Subsidiaries v Tax Appeals Trib. of the State of N.Y., 210 AD3d 86 [3d Dept 2022]). In considering petitioner's contentions related [*2]to the royalty income exclusion raised herein, which are nearly identical to those raised and recently decided in Walt Disney, we find no reason to depart from our recent holding on this issue (id. at 89-92).
Although this Court also rejected the challenge under the dormant Commerce Clause in Walt Disney (id. at 92-93), petitioner's arguments herein are distinguishable from the arguments raised in Walt Disney. Specifically, petitioner contends that the Tribunal's interpretation of the royalty income exclusion (Tax Law § 208 [former (9) (o) (3)]) and the royalty expense addback (Tax Law § 208 [former (9) (o) (2)]) fail the internal and external consistency tests (see generally Complete Auto Transit, Inc. v Brady, 430 US 274, 279 [1977]), based on the combined impact of the royalty income exclusion and the royalty expense addback, which is both discriminatory and unfairly apportions taxes.
We disagree. The dormant Commerce Clause of the US Constitution "prohibits state taxation, or regulation, that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace" (Matter of Huckaby v New York State Div. of Tax Appeals, Tax Appeals Trib., 4 NY3d 427, 436 [2005] [internal quotation marks, brackets and citations omitted], cert denied 546 US 976 [2005]; see US Const, art I, § 8; Westinghouse Elec. Corp. v Tully, 466 US 388, 403 [1984]). "Unconstitutional discrimination means differential treatment of in-state and out-of-state economic interests whereby the differential tax treatment of two entities results solely from the situs of their activities and provides a commercial advantage to local business" (Matter of Walt Disney Co. & Consol. Subsidiaries v Tax Appeals Trib. of the State of N.Y., 210 AD3d at 92 [internal quotation marks, brackets, ellipsis and citations omitted]; see Hunter v Warren County Bd. of Supervisors, 21 AD3d 622, 626 [3d Dept 2005]). To this end, "[a] state tax on interstate commerce violates the dormant Commerce Clause unless it is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State" (Matter of Huckaby v New York State Div. of Tax Appeals, Tax Appeals Trib., 4 NY3d at 436 [internal quotation marks and citation omitted]; see Matter of Zelinsky v Tax Appeals Trib. of State of N.Y., 1 NY3d 85, 90 [2003], cert denied 541 US 1009 [2004]). "Legislative enactments carry an exceedingly strong presumption of constitutionality, and while this presumption is rebuttable, one undertaking that task carries a heavy burden of demonstrating unconstitutionality beyond a reasonable doubt" (Matter of Walt Disney Co. & Consol. Subsidiaries v Tax Appeals Trib. of the State of N.Y., 210 AD3d at 92 [internal quotation marks, brackets and citation omitted]).
Although applying the internal consistency test is not the first step in the dormant [*3]Commerce Clause inquiry (see Matter of Tamagni v Tax Appeals Trib. of State of N.Y., 91 NY2d 530, 540 [1998], cert denied 525 US 931 [1998]), in light of this Court's holding in Walt Disney, we find it necessary to focus our examination only on the "fairly apportioned" prong of the dormant Commerce Clause test, which implicates the internal and external consistency tests. Such tests are used to measure the "threat of misapportionment" of a tax (Matter of Huckaby v New York State Div. of Tax Appeals, Tax Appeals Trib., 4 NY3d at 436 and n 5 [internal quotation marks omitted]; see Matter of Zelinsky v Tax Appeals Trib. of State of N.Y., 1 NY3d at 91; Tennessee Gas Pipeline Co. v Urbach, 96 NY2d 124, 133 [2001]). "To be internally consistent, the tax must be structured so that if every state were to impose an identical tax, no multiple taxation would result" (Matter of Zelinsky v Tax Appeals Trib. of State of N.Y., 1 NY3d at 91; see Oklahoma Tax Comm'n v Jefferson Lines, Inc., 514 US 175, 185 [1995]).
Here, petitioner argues that the internal consistency test is violated because, if every state imposed the royalty expense addback and royalty income exclusion, licensing transactions with non-New York licensees would be subject to greater taxation than licensing transactions with New York licensees. However, this interpretation is too narrow. It neglects, as contended by the Division and as we recently emphasized, the fact that there are two taxable events occurring, one being the payment and the other being receipt of that payment (see Matter of Walt Disney Co. & Consol. Subsidiaries v Tax Appeals Trib. of the State of N.Y., 210 AD3d at 89; see generally Matter of Pepsico, Inc. v Bouchard, 102 AD2d 1000, 1001 [3d Dept 1984]). Petitioner's interpretation further views these transactions in a vacuum, particularly ignoring other provisions of the Tax Law, including Tax Law former § 211 (4),[FN1] which creates an offset. When these two actions are properly recognized and balanced based on the whole scheme of taxation, non-New York licensees would not be subject to greater taxation than those with New York licensees because non-New York licensees would be able to realize a deduction. To the extent that petitioner posits that there could still be instances of multiple taxation in different states due to the separate events of payment and of receiving such payment,
" '[t]he multiple taxation placed upon interstate commerce by such a confluence of taxes is not a structural evil that flows from either tax individually, but it is rather the accidental incident of interstate commerce being subject to two different taxing jurisdictions' " (Matter of Zelinsky v Tax Appeals Trib. of State of N.Y., 1 NY3d at 96, quoting Oklahoma Tax Comm'n v Jefferson Lines, Inc., 514 US at 192). Accordingly, we cannot say the New York tax scheme offends the dormant Commerce Clause after applying the internal consistency test.
Petitioner's application of the external consistency test [*4]is equally flawed. The test for "[e]xternal consistency looks to 'the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State' " (Matter of Huckaby v New York State Div. of Tax Appeals, Tax Appeals Trib., 4 NY3d at 436 n 5, quoting Oklahoma Tax Comm'n v Jefferson Lines, Inc., 514 US at 185). "External consistency is essentially a practical inquiry for determining whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed" (Matter of Zelinsky v Tax Appeals Trib. of State of N.Y., 1 NY3d at 91 [internal quotation marks and citations omitted]). Here, petitioner specifically is challenging the royalty income exclusion as violating the external consistency test. Although petitioner argues that the extraterritorial economic activity is generated by intangible property like licenses and patents exploited outside the United States, this ignores the fact that petitioner is organized under the laws of New York and both petitioner and WTC have located their head offices in New York. As highlighted by the Division, petitioner has enjoyed rather significant tax credits under the New York tax scheme it now complains of; when measured against the challenged royalty income exclusion, it cannot be said that these benefits are unreasonable in comparison. As such, the tax scheme also passes the external consistency test.
Lastly, we reject petitioner's foreign Commerce Clause argument. Since WTC primarily transacts business outside of the United States, we must "determine if the challenged tax exposes [petitioner] to an enhanced risk of multiple taxation and impairs [f]ederal uniformity in an area where [f]ederal uniformity is essential" (Ontario Trucking Assn. v New York State Dept. of Taxation & Fin., 236 AD2d 70, 72 [3d Dept 1997]). Petitioner's argument is largely based on its internal consistency test, which we have found to be without merit. Such contentions under both prongs of this evaluation are also speculative and conclusory, as petitioner points to no foreign policy issues or federal directives that the New York tax scheme would violate (compare id. at 73-74). Accordingly, petitioner cannot carry its burden that the foreign Commerce Clause is offended by the New York tax scheme. We have considered the parties' remaining contentions, including those contained in the supplemental submission from petitioner following oral argument, and find such arguments to be distinguishable, academic or without merit.
Egan Jr., J.P., Lynch, Clark and Ceresia, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: This has been recodified in Tax Law § 210-C.